**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia K. Venditti (State Bar No. 332688)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
jvenditti@bursor.com

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

CHARMAINE TATE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

VITAS HEALTHCARE CORPORATION,

Defendant.

Case No. 2:24−CV−01327−DJC−CSK

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Dept.: Courtroom 10 – 13th Floor
Judge: Hon. Daniel J. Calabretta

**TABLE OF CONTENTS**

**PAGE(S)**


INTRODUCTION .......... 1

ARGUMENT .......... 3

I. PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF CIPA § 631 .......... 3

A. Invoca Was A Third-Party Wiretapper To Plaintiff's Communications With Defendant .......... 3

1. Invoca Is A Separate And Distinct Third Party With Capabilities Beyond That Of A Tape Recorder .......... 4

2. Defendant's Proffered Interpretation Is Contrary To The Text Of CIPA § 631, The Holdings Of The California Supreme Court, And Legislative History .......... 11

B. Defendant Aided, Agreed With, Employed, And Otherwise Enabled Invoca To Wiretap Plaintiff's Communications .......... 14

II. PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF CIPA § 632 .......... 18

CONCLUSION .......... 21

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Augustine v. Lenovo (United States), Inc.*,
2023 WL 4938050 (S.D. Cal. Aug. 2, 2023) .......... 4

*Balletto v. Am. Honda Motor Co.*,
2023 WL 7026931 (N.D. Cal. Oct. 24, 2023) .......... 5, 11

*Balletto v. Am. Honda Motor Co.*,
2024 WL 589090 (N.D. Cal. Feb. 13, 2024) .......... 6, 7, 9

*Cody v. Boscvo's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023) .......... 11

*Cody v. Ring LLC*,
2024 WL 735667 (N.D. Cal. Feb. 22, 2024) .......... 5

*Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*,
31 F. Supp. 3d 237 (D.D.C. 2014) .......... 17

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 3, 15

*D'Angelo v. FCA US, LLC*,
2024 WL 1625771 (S.D. Cal. Mar. 28, 2024 ) .......... 5, 7

*D'Angelo v. Penny OpCo, LLC d/b/a JCPenney*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 5, 12

*Doe v. Meta Platforms, Inc.*,
2023 WL 5837443 (N.D. Cal. Sept 7, 2023) .......... 3, 19

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) .......... 19

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 5599241 (S.D. Cal. Feb. 12, 2024) .......... 16

*Flowers v. Twilio, Inc.*,
2016 WL 11684603 (Cal. Super. Ct. Aug. 2, 2016) .......... 5

*Garcia v. Build.com, Inc.*,
2024 WL 1349035 (S.D. Cal. Mar. 29, 2024) .......... 9

*Garcia v. Yeti Coolers, LLC*,
2023 WL 5736006 (C.D. Cal. Sept. 5, 2023) .......... 7

*Gladstone v. Amazon Web Servs., Inc.*,
2024 WL 3276490 (W.D. Wash. July 2, 2024) ..................................................... passim

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ..................................................... 11, 12

*Heiting v. Taro Pharms. USA, Inc.*,
2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) ..................................................... 5, 16

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..................................................... 19

*In re Cell Tower Litig.*,
2012 WL 1903883 (S.D. Cal. May 24, 2012) ..................................................... 15

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ..................................................... 19

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ..................................................... 16, 18, 19, 20

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ..................................................... passim

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ..................................................... 20

*Johnson v. Blue Nile, Inc.*,
2021 WL 1312771 (N.D. Cal. 2021) ..................................................... 11

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) ..................................................... 19

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ..................................................... 20, 21

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. 2017) ..................................................... 19

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ..................................................... passim

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ..................................................... passim

*Rodriguez v. Ford Motor Co.*,
2024 WL 1223485 (S.D. Cal. Mar. 21, 2024) ..................................................... 5, 16, 17, 20

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017) ..................................................... 21

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 5, 8, 13

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) .......... 15

*Strehl v. Guitar Center, Inc.*,
2024 WL 2790373 (C.D. Cal. May 29, 2024) .......... 17

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 9

*Turner v. Nuance Communications, Inc.*,
2024 WL 2750017 (N.D. Cal. May 28, 2024) .......... passim

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
489 U.S. 749 (1989) .......... 17

*United States v. Hutchins*,
361 F. Supp. 3d 779 (E.D. Wis. 2019) .......... 3, 18

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) .......... 21

*Valenzuela v. Nationwide Mutual Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... passim

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) .......... 5

*Yale v. Clicktale, Inc.*,
2021 WL 4025797 (N.D. Cal. Aug. 24, 2021) .......... 11

*Yockey v. Salesforce, Inc.*,
2023 WL 5519323 (N.D. Cal. Aug. 25, 2023) .......... passim

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 4, 5, 6

**STATUTES**

Cal. Penal Code § 630 .......... 1

Cal. Penal Code § 631(a) .......... passim

**REGULATIONS**

45 C.F.R. § 164.502 .......... 10

45 C.F.R. § 164.502(a)(3) .......... 10

45 C.F.R. § 164.504(e)(2)(i)(A) .......... 10

Plaintiff Charmaine Tate ("Plaintiff") respectfully submits this Opposition to Defendant Vitas Healthcare Corporation's ("Vitas" or "Defendant') Motion to Dismiss the First Amended Complaint (ECF No. 12) (the "Motion" or "MTD").

**INTRODUCTION**

When the California Legislature enacted the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.* ("CIPA"), it recognized "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630. Further, as the California Supreme Court has recognized, the intent of the CIPA is to protect the right of Californians to control who does and does not get to learn personal information about them:

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.
>
> …
>
> [S]uch secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.

*Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (cleaned up). To wit, when consumers communicate with a business's customer service representatives, they expect to only communicate with the company through its employees. This is especially true in the healthcare setting—and, specifically, hospice and palliative care, which is what Defendant provides. *See* First Amended Complaint (ECF No. 10) (the "FAC") ¶ 36. Healthcare information is sensitive and personal. Consumers *do not* expect health-related communications with a healthcare provider to be secretly listened to, sent to, and accessed

by completely separate third party—the "unseen auditor."

But that is exactly what happened here. When Plaintiff called Defendant regarding hospice care for her grandmother, her communications were listened to, learned, and recorded by a *completely separate company*: Invoca, Inc. ("Invoca"). *See* FAC ¶¶ 42-45. Invoca, as a completely separate company from Vitas, had no business learning the contents of Plaintiff's sensitive conversation, much less having the capability to analyze that conversation and use it to market and improve Invoca's products and services. *See generally id.* ¶¶ 20-35. But that is the exact result intended by Defendant, whose own Chief Marketing Officer acknowledges that Defendant employs Invoca to, *inter alia*, record and analyze calls. *See id.* ¶¶ 37-38. Accordingly, Invoca was an "unseen auditor" to Plaintiff's communications with Defendant, thereby depriving Plaintiff of her "right to control the nature and extent of the firsthand dissemination of his statements." *Ribas*, 38 Cal. 3d at 361. Because Defendant aided, agreed with, employed, and otherwise enabled Invoca's conduct, Defendant is liable for violating CIPA § 631. And because Defendant used Invoca to record or eavesdrop on these confidential communications, Defendant is also liable for violating CIPA § 632.

In an effort to escape liability, Defendant's Motion ignores the text, case law, and policy surrounding CIPA §§ 631 and 632, and trots out opinions that have largely done the same. For instance, Defendant contends Invoca is not a "third party wiretapper" under a legal standard that has been rejected by "growing number of district courts" as contrary to the text of CIPA § 631 and the California Supreme Court's binding opinion in *Ribas*. *See Turner v. Nuance Communications, Inc.*, 2024 WL 2750017, at *9-10 (N.D. Cal. May 28, 2024) (sustaining CIPA § 631 claim against competitor of Invoca) (collecting cases); *see also Gladstone v. Amazon Web Servs., Inc.*, 2024 WL 3276490, at *6 (W.D. Wash. July 2,

2024) (same). Defendant also contends it did not "aid and abet" Invoca's conduct, even though the word "abet" appears nowhere in the text of CIPA § 631 and the statute broadly prohibits anyone from "enabling" wiretapping. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1129-30 (S.D. Cal. 2023); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019). And Defendant contends Invoca's platform is not an "electronic amplifying or recording device" for the purposes of CIPA § 632, even though "[t]he majority of courts to consider this issue" under various wiretapping laws, including CIPA § 632, "have entertained the notion that software may be considered a device." *United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) (collecting cases); *see also*, *e.g.*, *Gladstone*, 2024 WL 3276490, at *8; *Doe v. Meta Platforms, Inc*. 2023 WL 5837443, at *7 (N.D. Cal. Sept 7, 2023).

Put simply, Defendant asks the Court to blindfold itself as to what CIPA actually says and has been interpreted to mean, in order to exempt Defendant from liability. However, CIPA represents the will of the California legislature, and it must be enforced as written. This Court may not substitute its own judgment for that of the California legislature and it should not adopt Defendant's erroneous interpretation of the statute.

For the following reasons, Defendant's Motion should be denied.

## ARGUMENT

## I. PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF CIPA § 631

### A. Invoca Was A Third-Party Wiretapper To Plaintiff's Communications With Defendant

Plaintiff alleges Defendant aided, agreed with, or employed Invoca to wiretap Plaintiff's communications with Defendant in violation of CIPA § 631(a). *See* FAC ¶¶ 4, 64-66. Defendant contends "Plaintiff's § 631 claim fails because she does not and cannot plead facts showing Invoca is a third-party capable of using the alleged communications for

its own purposes." MTD at 4:12-14. In other words, Defendant argues that if Invoca was not a third-party wiretapper to Plaintiff's communications, then Defendant cannot be liable for aiding, agreeing with, or employing any wiretapping. But whether Invoca is a third-party wiretapper is a "a question of fact for a jury, best answered after discovery into the storage mechanics of [Invoca's software]." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021); *see also Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050, at *3 (S.D. Cal. Aug. 2, 2023) (same).

Regardless, Defendant employs the wrong analysis. As a "growing number of district courts" have recognized, a software-as-a-service provider ("SaaS") is a third-party wiretapper if it has "capability to use its record of the interaction for any other purpose." *See Turner v. Nuance Communications, Inc.*, 2024 WL 2750017, at *9-10 (N.D. Cal. May 28, 2024) (cleaned up). The question is *not* whether Invoca uses the communications for its own purposes. Indeed, Defendant's interpretation of CIPA § 631(a) contradicts the statute's plain text, California Supreme Court case law, and the legislative policy behind CIPA § 631(a) (all of which, of course, Defendant fails to reference in its briefing). For the following reasons, therefore, Invoca *was* a third-party wiretapper to Plaintiff's communications with Defendant, making Defendant liable for aiding, agreeing with, and employing Invoca's conduct.

*1. Invoca Is A Separate And Distinct Third Party With Capabilities Beyond That Of A Tape Recorder*

As a "growing number of district courts" have held (*Turner*, 2024 WL 2750017, at *10), a SaaS provider is a "third party" under CIPA § 631(a) if the SaaS provider "ha[s] the *capability* to use its record of the interaction for any other purpose ([unlike] a tape recorder [that] has no independent capability to divulge the recording for any other purpose but that of its owner)." *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023)

(italics in original); *see also*, *e.g.*, *Yockey v. Salesforce, Inc.*, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023) (adopting "capability" approach); *Balletto v. Am. Honda Motor Co.*, 2023 WL 7026931, at *2 (N.D. Cal. Oct. 24, 2023) (same); *Turner*, 2024 WL 2750017, at *10 (same); *Gladstone*, 2024 WL 3276490, at *6 (same); *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *7 (C.D. Cal. Nov. 27, 2023) (same); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) (same); *Cody v. Ring LLC*, 2024 WL 735667, at *6 (N.D. Cal. Feb. 22, 2024) (same); *Rodriguez v. Ford Motor Co.*, 2024 WL 1223485, at *14 (S.D. Cal. Mar. 21, 2024) (same); *D'Angelo v. FCA US, LLC*, 2024 WL 1625771, at *13–14 (S.D. Cal. Mar. 28, 2024 ) (same); *Heiting v. Taro Pharms. USA, Inc.*, 2023 WL 9319049, at *4 (C.D. Cal. Dec. 26, 2023) (same). The "capability" approach does not require that the SaaS provider actually use the data for another purpose in the instant action, only that the SaaS provider can. *See Javier*, 649 F. Supp. 3d at 900 (finding that SaaS provider was a third party where it "can use that information for other purposes, even if [plaintiff] has not alleged that they have done so in this case").[1]

---

[1] A number of courts have even held that a SaaS provider is a third-party wiretapper by virtue of the fact that it is a separate legal entity that offers 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021) (finding SaaS provider was a third party to communications between website and its customers); *see also*, *e.g.*, *Valenzuela v. Nationwide Mutual Ins. Co.*, 686 F. Supp. 3d 969, 981 (C.D. Cal. 2023) ("[A] plausible inference from Valenzuela's allegations is that Akamai—a corporate entity wholly distinct from Nationwide—is a third party learning the contents of communications in real time."); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("[I]t cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication. Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly. That person remains a third party, even as a direct recipient of the speaker's communication."); *D'Angelo v. Penny OpCo, LLC d/b/a JCPenney*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023) ("Plaintiffs sufficiently allege Defendant allowed Vergic to contemporaneously duplicate their chat conversations with Defendant as they occurred, thereby reading them. … Therefore, Plaintiffs successfully allege, at this stage, that JC Penney may be liable for violating Clause Two of CIPA, by aiding and abetting Vergic."); *Flowers v. Twilio, Inc.*, 2016 WL 11684603, at *1 (Cal. Super. Ct. Aug. 2, 2016) ("[T]he complaint makes clear that it is Twilio, not its clients, that recorded the communications … The allegations are not, as Twilio asserts, that Twilio simply provided a software product that third parties misused.").

Thus, the question before the Court is whether Invoca can simply record the communications and provide them to Defendant and nothing else (just like a tape recorder), or if Invoca has other capabilities or functionalities that extend beyond that of a tape recorder. Plaintiff's allegations clearly indicate that the latter is true. Specifically, Plaintiff alleges Invoca has the capability to use the wiretapped conversations for a number of purposes other than simply providing them to Defendant, including but not limited to:

- "[E]xtract[ing] usable data from human speech and conversation using natural language processing (NLP) to allow computers to 'understand' speech and artificial intelligence (AI) to extract and organize data from it." FAC ¶ 20 (cleaned up).
- "[C]reat[ing] AI models … that capture the intent, product/service interest, and conversion outcome of every conversation," which are then mapped and analyzed "into themes and topics." *Id.* ¶ 22 (cleaned up).
- Measuring the type of person speaking (sales, customer, etc.), the purpose of the call, and whether the caller made a purchase or booked an event, and determining whether the caller asked for specific options. *See id.* ¶ 23.
- Scoring the performance of the agent on the call and analyzing the pros and cons of the call. *See id.* ¶ 24.
- Using "information about your calls" to "improve, operate, maintain, and, in some cases, market the Invoca Platform and [] Services." *Id.* ¶ 32; *see also id.* ¶¶ 33-34 (same).

Thus, Plaintiff alleges Invoca has capabilities that extend beyond a tape recorder for at least two reasons. *First*, Plaintiff alleges Invoca has the capability to "capture[], store[], and interpret[] her real-time data [FAC ¶¶ 20-24]—which extends beyond the ordinary function of a tape recorder." *Yoon*, 549 F. Supp. 3d at 1081; *see also*, *e.g.*, *Turner*, 2024 WL 2750017, at *10 (SaaS provider was a third party wiretapper where "Nuance developed an AI Risk Engine which uses deep neural networks to analyze consumers' voices and make intelligent authentication and fraud risk assessments") (cleaned up); *Balletto v. Am.*

*Honda Motor Co.*, 2024 WL 589090, at *1, *3 (N.D. Cal. Feb. 13, 2024) (SaaS provider was a third party wiretapper where "Salesforce [] has the capability to use the information contained in chats" to "analyze Chat communications to assist with customer service interactions and data analytics"); *Garcia v. Yeti Coolers, LLC*, 2023 WL 5736006, at *3 (C.D. Cal. Sept. 5, 2023) (SaaS provider was a third party wiretapper where "Plaintiff alleges that ASI's capabilities were significantly more sophisticated than the tape recorder in Rogers," including because SaaS provider "collect[ed] and store[d] chat transcripts"); *Javier*, 649 F. Supp. 3d at 900 (SaaS provider was a third party where "[plaintiff] pleads that ActiveProspect monitors, analyzes, and stores information about visits to Assurance's websites"); *Valenzuela*, 686 F. Supp. 3d at 980 n.9 (finding that "software that allows a third party to capture messages in real time and later perform data analysis" would qualify as a third-party wiretapper).

*Second*, Plaintiff alleges Invoca has the capability to use the recorded calls to market and "improve its own products and services" (FAC ¶¶ 32-34), which "shows that [Invoca] is capable of creating, recording, and retaining data for purposes other than sending the data back to [Defendant]." *Gladstone*, 2024 WL 3276490, at *6 (cleaned up); *see also Balletto*, 2024 WL 589090, at *1, *3 (N.D. Cal. Feb. 13, 2024) (finding SaaS provider was a third party wiretapper where "Salesforce [] has the capability to use the information contained in chats to (i) improve Salesforce's own products and services; (ii) develop new Salesforce products and services") (cleaned up); *Turner*, 2024 WL 2750017, at *10 ("[T]he court may reasonably infer that at the very least, Nuance can use consumers' voice prints to improve its own products and services—for example, to improve the accuracy of its authentication software for uses beyond benefiting Chase."); *D'Angelo*, 2024 WL 1625771, at *14 ("The Complaint alleges that Salesforce harvests and exploits the data collected from the chat

conversations for financial gain, and analyzes the intercepted conversations for Salesforce's own business purposes.") (cleaned up)

Defendant's arguments to the contrary are unpersuasive. As an initial matter, Defendant contends Invoca's usage of its clients' data "is governed by its' clients respective privacy policies" and Invoca's "[c]ollecting and maintaining communications on behalf of a client does not give rise to a CIPA violation." MTD at 6:3-7. This is not the crux of Plaintiff's allegations. Instead, Plaintiff alleges Invoca is capable of using the communications to create new products and services (and/or marketing new and pre-existing ones), not that Invoca is simply a repository for communications. *See Gladstone*, 2024 WL 3276490, at *6 (rejecting the defendant's argument that it was not a third party because it "obtains no rights to a customer's content except for use in providing services to the customer" because CIPA § 631 cannot be interpreted "based on the intentions and usage of the software provider") (cleaned up). That Defendant and Invoca may have an agreement as to how Invoca can use Defendant's information does not mean that Invoca is incapable of using the information for some other purpose. On the contrary, Defendant's argument suggests it is plausible to infer that any contractual restriction is necessary because Invoca's software is technologically capable of using the recordings. It also does not matter whether Invoca is acting on Defendant's behalf, and holding otherwise is contrary to the text of CIPA § 631 and the California Supreme Court's holding in *Ribas v. Clark*, 38 Cal. 3d 355 (1985). *See* Cal. Penal Code § 631(a) (prohibiting someone from "employ[ing]" another to commit wiretapping); *Javier*, 649 F. Supp. 3d at 900 (noting "[t]he *Ribas* Court did not consider the wife's friend's intentions or the use to which they put the information they obtained. Instead, it emphasized the privacy concerns at issue with having an 'unannounced second auditor' listening in on the call"); *Saleh*, 562 F. Supp. 3d at 521 ("FullStory did not become a 'party'

to the communication simply because it was providing recording and transmission services for Nike.").

The cases Defendant cites are also distinguishable. For instance, Defendant cites *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023), in support of its argument on this point. *See* MTD at 5:6-13. However, unlike here, the plaintiff in *Swarts* did not allege that "LivePerson, or any other third party, can use the information obtained for any other purpose besides relaying it to Home Depot." *Swarts*, 689 F. Supp. 3d at 746; *cf*. FAC ¶ 30. Defendant also relies on *Yockey*, 688 F. Supp. 3d at 973 (*see* MTD at 4:28-5:13), where the allegations were not sufficient to "support a reasonable inference that Salesforce has the capability to use these communications for any purpose other than furnishing them to Kaiser." *Yockey*, 688 F. Supp. 3d at 973. But, on amendment, the *Yockey* plaintiffs added allegations that were identical to those found sufficient in *Balletto*, 2024 WL 589090, at *1; *see also Yockey v. Salesforce, Inc.*, Case No. 4:22-cv-9067, ECF No. 43 ¶¶ 26-27 (N.D. Cal. Oct. 6, 2023). Indeed, Salesforce *conceded* that such allegations were sufficient to allege it was a third-party wiretapper. *See Yockey*, ECF No. 44 at 7:8-18 (N.D. Cal. Nov. 3, 2023). In addition, unlike here, the only allegations that the SaaS provider was a third-party wiretapper in *Rodriguez*, 2024 WL 12234485, and in *Garcia v. Build.com, Inc.*, 2024 WL 1349035 (S.D. Cal. Mar. 29, 2024), were that "the chat is routed through [the provider's] servers so they may simultaneously collect a transcript of that chat." *Garcia*, 2024 WL 1349035, at *6 (citation and internal quotation marks omitted); *Rodriguez*, 2024 WL 12234485, at *13. By contrast, Plaintiff alleges Invoca has the capability to analyze and interpret the calls it records, and that Invoca has the capability to use the calls to market and improve its products and services. Thus, Defendant's reliance on *Rodriguez* and *Garcia* is misplaced. *See* MTD at 5:22-6:17.

Finally, in a footnote, Defendant makes a factual argument (not based on anything in the pleadings or submitted to the Court) that "Invoca operates pursuant to a Business Associate Agreement ('BAA'), which precludes it from using any confidential data for its own purposes in compliance with federal law restricting a business associate's authority to use or disclose protected health information." MTD at 6 n.3 (citing 45 C.F.R. § 164.502). Other than citing to this regulation broadly, Defendant does not cite to any specific provision of this regulation (or language from the unintroduced contract) that would prohibit Invoca from using the communications internally to improve its products and services or to market the same. In fact, 45 C.F.R. § 164.502(a)(3) specifically allows a "business associate" to use "protected health information" for "the proper management and administration of the business associate" (45 C.F.R. § 164.504(e)(2)(i)(A)), which Defendant and Invoca may interpret to allow improving, maintaining, and operating Invoca's services (FAC ¶¶ 32-34). Defendant's argument thus raises myriad factual questions such as: (i) whether Defendant and Invoca consider the recordings of the conversations at issue to include "protected health information"; and (ii) whether improving and developing Invoca products and services falls within the ambit of the "management and administration of the business associate." Unless Defendant is currently prepared to introduce all evidence related to its contract with Invoca, what information Invoca uses, and how Inovca uses said information (and it obviously is not), the Court should reject this fact-based challenge at the pleadings stage. Regardless, the fact is that notwithstanding any contractual restrictions, Invoca is still "capable" of using the information to improve its products and services and to market the same. That is all that is required. *See Javier*, 649 F. Supp. 3d at 900 (SaaS provider was a third party where "Active Prospect can use that information for other purposes, even if Javier has not alleged that they have done so in this case").

### 2. *Defendant's Proffered Interpretation Is Contrary To The Text Of CIPA § 631, The Holdings Of The California Supreme Court, And Legislative History*

Defendant also argues "a company's use of a third-party vendor does not constitute eavesdropping under CIPA where the vendor is a tool, agent, or extension of the company itself." MTD at 4:14-16. As other courts have observed, the gist of this argument is that "where the alleged third party is doing only what the party to the communication directs, then that purported third party is nothing more than an extension of the party and cannot be liable under a statute concerned only with non-party recording." *Javier*, 649 F. Supp. 3d at 899 (cleaned up). The lead case supporting Defendant's argument is *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021), along with other decisions that follow *Graham*'s reasoning. *See*, *e.g.*, *Cody v. Boscvo's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) ("Consistent with the reasoning of cases like *Graham v. Noom, Inc.*, the Court further concludes that in order to establish such violations, Plaintiff must provide facts suggesting that Webex and Kustomer are recording Defendant's customers' information for some use or potential future use beyond simply supplying this information back to Defendant.").[2]

As other courts have commented, however, "*Graham* and its progeny are based on a misinterpretation of Section 631 and *Ribas*, both of which compel the conclusion that the third party's intentions with respect to the use of the collected information are irrelevant." *Yockey*, 688 F. Supp. 3d at 972; *see also*, *e.g.*, *Javier*, 649 F. Supp. 3d at 900 (rejecting *Graham*); *Balletto*, 2023 WL 7026931, at *2 (same); *Valenzuela*, 686 F. Supp. 3d at 980 (same); *Gladstone*, 2024 WL 3276490, at *6 (same); *Turner*, 2024 WL 2750017, at *10

[2] Defendant also cites *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *2 (N.D. Cal. 2021), and *Yale v. Clicktale, Inc.*, 2021 WL 4025797 (N.D. Cal. Aug. 24, 2021), which were decided by the same judge as *Graham* and at around the same time.

(same). Thus, the Court should disregard Defendant's argument based on *Graham* as legally unsound.

*First*, as to the text of the statute, *Graham* found there could be no liability for the SaaS provider because "there are no allegations [] that [the SaaS provider] intercepted and used the data itself." *Graham*, 533 F. Supp. 3d at 832. But this reading "interprets the second prong of the statute"—which penalizes "reading" communications—"based on the intentions and usage of the prospective third party." *Javier*, 649 F. Supp. 3d at 900. And "the third prong of the statute already penalizes 'use.'" *Id*. "Thus, reading a use requirement into the second prong would add requirements that are not present (and swallow the third prong in the process)." *Id*.; *see also D'Angelo v. Penny OpCo*, 2023 WL 7006793, at *7-8 ("A use requirement is more appropriate in a Clause Three, not Clause Two, analysis … To plausibly allege a violation of Clause Two, [plaintiffs] need not allege that Vergic [conducted wiretapping] for its own use.").

Further, the fourth clause of CIPA § 631(a) penalizes those who "aid[], agree[] with, employ[], or conspire[] with any person" to conduct wiretapping. In other words, CIPA § 631 not only prohibits wiretapping by third parties, it also prohibits *a* party to the communication (like Defendant) from allowing another to wiretap *on the party's behalf*. *See*, *e.g.*, *Valenzuela*, 686 F. Supp. 3d at 981 ("Section 631 makes clear that aiding a violation is also a violation."); *Revitch*, 2019 WL 5485330, at *2 ("[T]he complaint adequately alleges that Moosejaw violated section 631 by enabling NaviStone's wrongdoing."). *Graham*'s reading is contrary to this plain text as well, as it would exempt an employer who asks his or her employee to conduct wiretapping, despite the text of the statute saying the opposite.

*Second*, *Graham* is contrary to *Ribas v. Clark*, 38 Cal. 3d 355 (1985). In that case, a conversation between a wife and husband, Ribas, was eavesdropped on by the wife's

friend, Clark. There were no allegations that Clark used the wiretapped information for her own benefit. Clark was a separate person who listened in on a conversation to which she was not a party, at the direction and for the benefit of the wife. Nonetheless, the California Supreme Court found Clark was a third-party wiretapper for the purposes of CIPA § 631(a). *See id.* at 361-62. Indeed, *Ribas* went as far as to contemplate liability under CIPA § 631 for an employer who "*request[s] a secretary to secretly transcribe a conversation over an extension*," even though a secretary would be doing the recording solely for the benefit of his or her employer. *Id*. at 361 (emphasis added).

Thus, contrary to *Graham* (and Defendant's interpretation of CIPA § 631(a)), the California Supreme Court "did not consider the wife's friend's intentions or the use to which they put the information they obtained." *Javier*, 649 F. Supp. 3d at 900. "Instead, [*Ribas*] emphasized the privacy concerns at issue with having an unannounced second auditor listening in on the call." *Id.* (cleaned up). *Graham*'s holding (and Defendant's argument), however, would have exempted the friend and the hypothetical secretary from liability, as they were simply wiretapping on behalf of the wife and their employer respectively. But that is the opposite of what the California Supreme Court held.

*Finally*, the holding in *Graham*, as well as Defendant's argument here:

> would imply that any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation at the direction and for the benefit of a party. The text of section 631(a), however, does not contain any such exception, and indeed, [*Graham* and Defendant] invite an interpretation that would vitiate the statute's protections.

*Saleh*, 562 F. Supp. 3d at 520; *see also Valenzuela*, 686 F. Supp. 3d at 980 ("Eavesdropping on a conversation at the time it occurs is a violation of Section 631, even if done for the benefit of a party to the conversation."). In other words, adopting *Graham*'s approach (and Defendant's argument) would completely undermine CIPA's purpose of

preventing the dissemination communications to an unannounced second auditor, as it would allow any third party to escape liability so long as it was acting on behalf of a party to the communication. It would also eviscerate CIPA's two-party consent requirement, which was adopted to prevent such dissemination. *See Ribas*, 38 Cal. 3d at 361.

To summarize, Defendant argues that—based on the holding in *Graham*—Invoca cannot be liable if it is acting on behalf of Defendant. *See* MTD at 4:22-24 ("Plaintiff fails to plead facts suggesting that Invoca is anything more than an agent of VITAS that provides software enabling VITAS to retain and review its own data."). But a "growing number of district courts" have rejected the holding of *Graham* (and, by extension, Defendant's argument) as contrary to the text, caselaw, and legislative history surround CIPA § 631(a). *See*, *e.g.*, *Turner*, 2024 WL 2750017, at *10. Whether Invoca was acting at Defendant's behest or whether Invoca was using the communications for its own benefit is irrelevant to a violation of the first and second prong of CIPA § 631(a). *See id.* at *9 ("[T]he statutory language of section 631(a) does not require the SaaS provider to use the intercepted information for its own purposes in order to be a third party."). Accordingly, this Court should reject Defendant's flawed interpretation of CIPA § 631(a) and find Invoca was a third party wiretapper based on the "capability" approach. *See* Argument § I.A, *supra*. And, because Invoca is a third party wiretapper, Defendant is liable for aiding, agreeing with, and employing Invoca to conduct the wiretapping in violation of the fourth clause of CIPA § 631(a).

### B. Defendant Aided, Agreed With, Employed, And Otherwise Enabled Invoca To Wiretap Plaintiff's Communications

Defendant contends Plaintiff's CIPA § 631(a) fails because "Plaintiff [] fails to allege that Defendant knew that Invoca's conduct breached a duty to Plaintiff, or that Defendant knew of Invoca's allegedly unlawful purpose." MTD at 7:4-6. Not so.

*First*, Defendant applies the wrong legal standard to what is sufficient for "intent." Specifically, Defendant contends that the standard for "aiding and abetting" applies to determine whether its intent is sufficient. But the word "abet" appears *nowhere* in CIPA § 631(a). Instead, the fourth clause of CIPA § 631(a) broadly prohibits "[a]ny person" from "aid[ing], agree[ing] with, employ[ing], or conspir[ing] with any person or persons to unlawfully do, or permit, or cause to be done any of the acts" prohibited by the statute. Had the legislature intended for "aids" to mean "aids and abets," it would have written the latter term instead of the former. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1129-30 (S.D. Cal. 2023) ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause. Defendant provides no case law requiring the Court to analyze 'aids, agrees with, employs, or conspires with' as solely 'aiding and abetting.'"); *In re Cell Tower Litig.*, 2012 WL 1903883, at *2 (S.D. Cal. May 24, 2012) ("The first step in analyzing a statute is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning.") (cleaned up).

Rather, the legislature's use of the terms "aids," "agrees with," and "employs" indicates CIPA § 631(a) was meant to apply to a much broader swath of non-criminal conduct, regardless of "specific intent." *See Cousin*, 681 F. Supp. 3d at 1129-30.[3] To that end, "aid" should be interpreted as "to give assistance,"[4] "agrees with" as "to concur in opinion or purpose,"[5] and "employs" as "to make use of" or "to hire."[6] In short, a defendant

---

[3] The fact that CIPA is a criminal statute does not mean the Court should require a criminal level of intent. Indeed, the California Supreme Court has rejected application of criminal law principles like the rule of lenity to other provisions of CIPA. *See Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202 (2021) (rejecting application of rule of lenity to CIPA § 632.7).

[4] *Aid*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/aid.

[5] *Agree*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[6] *Employ*, BLACK'S LAW DICTIONARY (11th ed. 2019).

violates the fourth clause of CIPA § 631(a) where it simply "enables" another's wrongdoing. *See Revitch*, 2019 WL 5485330, at *2 ("[T]he complaint adequately alleges that Moosejaw violated section 631 by *enabling* NaviStone's wrongdoing.") (emphasis added). Defendant's cited authorities applying an "aiding and abetting" definition to liability contradict the text of the statute and should therefore be disregarded. *See Rodriguez*, 2024 WL 1223485, at *15; *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 5599241, at *6 (S.D. Cal. Feb. 12, 2024); *Heiting*, 2023 WL 9319049, at *6.

*Second*, to that end, Plaintiff sufficiently alleges Defendant enabled Invoca's wrongdoing. Specifically, Plaintiff alleges, *inter alia*, that (i) Defendant paid for and employed Invoca's services on its customer service platform; and (ii) knew and used Invoca to record and analyze calls for customer intent and to track certain phrases. FAC ¶¶ 37-38, 41, 66. Indeed, the FAC quotes comments from Defendant's Chief Marketing Officer detailing the capabilities of the Invoca platform and that Invoca was employed because of those capabilities. *See id.* ¶¶ 37-38. Such allegations are sufficient to allege Defendant knowingly and willfully enabled Invoca's wiretapping. *See*, *e.g.*, *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 954 (N.D. Cal. 2023) (requisite intent alleged where "it can reasonably be inferred that Disney entered into a contractual arrangement with Oracle under which Oracle would collect information from EPSN.com website users so that Disney could market to and attract new customers"); *Gladstone*, 2024 WL 3276490, at *11 (intent alleged where "[t]he SAC alleges that Amazon Connect is designed for the purpose of recording and analyzing communications between its customers (like Capital One) and consumers or other entities" and "Defendant features Capital One as a 'case study' on its website, demonstrating specific awareness of the nature of Capital One's business"); *Strehl v. Guitar Center, Inc.*, 2024 WL 2790373, at *7 (C.D. Cal. May 29, 2024) (intent alleged for

Pennsylvania wiretapping statute where "the Complaint [] alleges that Defendant pays Salesforce" to conduct the activity of capturing the electronic communications of visitors to the Website") (cleaned up); *Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237, 265 (D.D.C. 2014) (intent alleged for D.C. wiretapping statute because, "by hiring Gaubatz to make recordings of Plaintiffs, CSP actively brought about, caused, or instigated the recordings of Plaintiffs' offices").

*Third*, even applying the standard for intent that Defendant insists on (which the Court should reject), Plaintiff has still alleged the requisite intent by Defendant to state a CIPA § 631(a) claim. To establish "aiding and abetting" liability, Plaintiff must allege Defendant: "(a) kn[e]w the other's conduct constitute[d] a breach of duty and give substantial assistance or encouragement to the other to so act or (b) g[a]ve substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Rodriguez*, 2024 WL 1223485, at *15 (cleaned up). Here, Plaintiff alleges Invoca breached Plaintiff's "right to control the nature and extent of the firsthand dissemination of his statements." *Ribas*, 38 Cal. 3d at 361; *see also U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-64 (1989) ("[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person."). Plaintiff alleges that Defendant knew Invoca would be recording these private conversations because that was the specific purpose that Defendant employed Invoca for, per Defendant's own Chief Marketing Officer. *See* FAC ¶¶ 37-38. Defendant also should have known of the sensitivity of Plaintiff's conversations because Defendant is a "hospice and palliative care provider." *See id.* ¶¶ 36, 43; *see also Yockey*, 688 F. Supp. 3d 974 (finding medical-related communications are "confidential"). Indeed, Defendant has a duty under multiple

federal laws to keep such communications confidential. Moreover, Plaintiff alleges Defendant did not procure her consent to have Invoca record these communications. *See* FAC ¶¶ 44-45, 47. And, it should go without saying that Invoca could not have intercepted these communications but for Defendant contracting with Invoca for its services and allowing Invoca to record the communications. *See James*, 701 F. Supp. 3d at 954 ("[O]ne can infer Disney intended to have Oracle intercept because Disney entered into a contract with Oracle so that Oracle would provide such services."). Accordingly, even under the "aiding and abetting" standard, Plaintiff has sufficiently alleged Defendant substantially assisted and encouraged Invoca to breach Plaintiff's privacy.

## II. PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF CIPA § 632

Defendant contends Plaintiff's CIPA § 632 claim fails because "she does not and cannot plead facts showing Defendant used an electronic amplifying or recording device, as required by the statute." MTD at 7:25-28. This is wrong.

"The majority of courts to consider this issue" under the Federal Wiretap Act and analogous state wiretapping laws, including CIPA § 632, "have entertained the notion that software may be considered a device for the purpose of the Wiretap Act." *United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) (collecting cases); *see also*, *e.g.*, *Gladstone*, 2024 WL 3276490, at *8 ("[T]he Court finds that 'device,' as used in Section 632, can include software."); *Doe v. Meta Platforms, Inc*. 2023 WL 5837443, at *7 (N.D. Cal. Sept 7, 2023) ("I agree that the Pixel software is a device under [CIPA] section 632(a)."); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015) ("Plaintiffs have sufficiently alleged that the Carrier IQ Software is a 'device' for purposes of the Wiretap Act."); *Revitch*, 2019 WL 5485330, at *3 (under CIPA § 635, finding "NaviStone's code is a device … primarily or exclusively designed or intended for eavesdropping upon the

communication of another.") (cleaned up); *Luis v. Zang*, 833 F.3d 619, 634 (6th Cir. 2016) (holding plaintiff plausibly alleged that computer software was "a device … primarily useful for [] the surreptitious interception of [] electronic communications" under Federal Wiretap Act) (cleaned up); *Yockey*, 688 F. Supp. 3d at 975 (denying motion to dismiss Pennsylvania wiretapping claim where the defendant challenged that software was a "device"); *James*, 701 F. Supp. 3d at 957 (same).

Here, Plaintiff alleges that Defendant "uses Invoca to record whole calls, as well as for call routing and IVR." FAC ¶ 38 (cleaned up); *see also*, *e.g.*, FAC ¶¶ 2-4, 21, 39. Invoca's platform qualifies as an electronic amplifying or recording device for the purposes of CIPA § 632. *See Gladstone*, 2024 WL 3276490, at *7 (finding similar service provided by Amazon was a "device" for the purposes of CIPA § 632).

Defendant's contrary authorities should not persuade. Defendant cites to *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023), which found "software does not constitute a 'device' under the CIPA." *See* MTD at 8:8-12. To come to this (incorrect) conclusion, the court in *Doe* referenced two decisions concerning CIPA § 637.7 that Defendant also cites in its Motion: *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019), and *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. 2017). As courts have recognized, "Section 632 contains materially different language than Section 637.7, and it does not contain similar context that would narrow the meaning of 'device' here." *Gladstone*, 2024 WL 3276490, at *9 (distinguishing *In re Google Location History Litig.*). Specifically, CIPA § 637.7(d) defines a device as something "attached to a vehicle or other movable thing that reveals its location or movement by the transmission of electronic signals." By contrast, CIPA § 632 was enacted "to be more expansive," and "the Ninth Circuit has observed the California Supreme

Court's instruction that 'all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA.'" *Gladstone*, 2024 WL 3276490, at *7-8 (quoting *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022)); *see also Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) (Koh, J.) ("[W]hen faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection."). Thus, decisions citing to CIPA § 637.7—a narrower subsection of CIPA—should not dictate the Court's interpretation of the broader language of CIPA § 632.

Moreover, as several courts have noted:

> [Defendant's] position is problematic because it ignores the fundamental fact that, in order for software to work, it must be run on some kind of computing device. It is artificial to claim that software must be viewed in isolation from the computing device on which it runs and with which it is inseparable in regard to the challenged conduct.

*James*, 701 F. Supp. 3d at 958; *see also Rodriguez*, 2024 WL 1223485, at *7 ("It is not apparent to this Court why the statutory language would 'undeniably' apply to a computer but not the software that a computer entails."). In other words, accepting Defendant's argument would mean divorcing the Invoca software from the physical, tangible computer the software is running on. There is no commonsense reason to do this, and such an interpretation flies in the face of the California Supreme Court's directive to apply CIPA "to new technologies where such a reading would not conflict with the statutory scheme." *Matera*, 2016 WL 8200619, at *20.

Accordingly, the Invoca platform is an "electronic amplifying or recording device" for the purposes of CIPA § 632.

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety. If the Court grants the Motion in any respect, Plaintiff respectfully requests leave to amend. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (holding lower court erred in denying leave to amend after dismissing first amended complaint); *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1183 (9th Cir. 2016) (reversing denial of leave to amend even though the plaintiff had previously amended his pleading three times).

Dated: August 12, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Julia K. Venditti*
Julia K. Venditti

L. Timothy Fisher (State Bar No. 191626)
Julia K. Venditti (State Bar No. 332688)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
jvenditti@bursor.com

*Attorneys for Plaintiff and the Putative Class*