DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
AMY TU QUYEN LE (Bar No. 341925)
amy.le@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

KEYA I. PATEL (admitted *pro hac vice*)
keya.patel@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendant

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CHARMAINE TATE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

VITAS HEALTHCARE CORPORATION,

Defendant.

Case No. 2:24−CV−01327−DJC−CSK

**DEFENDANT'S REPLY ISO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Dept.: Courtroom 10 – 13th Floor
Judge: Honorable Daniel J. Calabretta

## TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ........................................................................ 1

II. ARGUMENT ........................................................................................... 2

A. This Court Should Adopt the More Persuasive View that Invoca Was Not a Third Party to the Parties' Communications ........................................... 2

1. The Relevant Question Should Be Whether the Software Provider Used Information Collected for Its Own Purposes ........................... 2

2. In Any Case, Plaintiff Fails to Plausibly Allege that Invoca Was Capable of Using Information Collected for Its Own Purposes ........ 5

B. Plaintiff Fails to Plausibly Allege that Defendant Knowingly and Willingly Aided and Abetted Wiretapping As Required by CIPA § 631(a) ................. 7

C. Plaintiff Fails to Plausibly Allege that Invoca's Software Is "An Electronic Amplifying or Recording Device" as Required Under CIPA § 632(a) ........ 12

III. CONCLUSION ....................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Holder*,
673 F.3d 1089 (9th Cir. 2012)....................3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................10

*Balletto v. Am. Honda Motor Co.*,
2024 WL 589090 (N.D. Cal. Feb. 13, 2024)....................6, 7

*Buffin v. City & County of San Francisco*,
2019 U.S. Dist. LEXIS 34253 (N.D. Cal. Mar. 4, 2019)....................3

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023)....................3

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015)....................13

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023)....................2

*Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*,
31 F. Supp. 3d 237 (D.D.C. 2014)....................11

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)....................9

*D'Angelo v. FCA US, LLC*,
2024 WL 1625771 (S.D. Cal. Mar. 28, 2024)....................6

*Doe v. Meta Platforms, Inc.*,
690 F.Supp.3d 1064 (N.D. Cal. 2023)....................13

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023)....................12, 14

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024)....................7, 8, 9

*Gladstone v. Amazon Web Servs.*,
2024 WL 3276490 (W.D. Wash. July 2, 2024)....................6, 7, 11, 13

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019)....................12

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................3

*Heiting v. Athenahealth, Inc.*,
2024 WL 3761294 (C.D. Cal. July 29, 2024) ....................5, 7

*Heiting v. Taro Pharms. U.S., Inc.*,
2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) ....................9, 10

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ....................11, 13

*Johnson v. Blue Nile, Inc.*,
No. 20-CV-08183-LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ....................3

*Jones v. Peloton Interactive, Inc.*,
2024 WL 3315989 (S.D. Cal. July 5, 2024) ....................2

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ....................2

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) ....................13

*Membrila v. Receivables Performance Mgmt., LLC*,
2010 WL 1407274 (S.D. Cal. Apr. 6, 2010) ....................4

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ....................12

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ....................8, 9, 13, 14

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ....................4

*Rodriguez v. Ford Motor Co.*,
2024 WL 1223485 (S.D. Cal. Mar. 21, 2024) ....................8, 9, 10, 11

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ....................3, 4, 5

*Strehl v. Guitar Center, Inc.*,
2024 WL 2790373 (C.D. Cal. May 29, 2024) ....................11

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ....................5, 6, 7

*Turner v. Nuance Commc'ns*,
2024 WL 2750017 (N.D. Cal. May 28, 2024) ....................6, 7

*United States v. Hutchins*,
361 F. Supp. 3d 779 (E.D. Wis. 2019) .......... 13

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .......... 10

*Valenzuela v. Kroger Co.*,
2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) .......... 8

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 3

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) .......... 11

*Yale v. Clicktale, Inc.*,
2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) .......... 3

*Yockey v. Salesforce, Inc.*,
2024 WL 3875785 (N.D. Cal. Aug. 16, 2024) .......... 6, 13

**Statutes**

18 U.S.C. § 2510 .......... 13

Cal. Pen. Code § 631(a) .......... *passim*

Cal. Pen. Code § 632(a) .......... *passim*

**Other Authorities**

*Amplifier*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/amplifier .......... 12

*Device*, CAMBRIDGE DICTIONARY,
https://dictionary.cambridge.org/us/dictionary/english/device .......... 12

Fed. R. Civ. P. 12(b)(6) .......... 1

Invoca, *Privacy Policy*, https://www.invoca.com/privacy-policy (last accessed September 4, 2024) .......... 10

*Recorder*, OXFORD ADVANCED LEARNER'S DICTIONARY,
https://www.oxfordlearnersdictionaries.com/us/definition/english/recorder .......... 12

Defendant VITAS Healthcare Corporation ("Defendant" or "VITAS") respectfully submits this reply in support of its motion to dismiss Plaintiff Charmaine Tate's ("Plaintiff") First Amended Complaint, ECF No. 10 ("FAC"), for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6).

## I. PRELIMINARY STATEMENT

In her opposition to VITAS' motion to dismiss, (ECF No. 12) ("MTD"), Plaintiff accuses VITAS of asking the Court to "blindfold" itself to the text and meaning of the California Invasion of Privacy Act ("CIPA"). But Plaintiff concedes that VITAS' alternate interpretation of CIPA is supported by case law throughout the Ninth Circuit. ECF No. 16 ("Opposition") at 2. In light of this Circuit split, this Court should exercise its independent judgment in evaluating the text, case law, and policy surrounding CIPA §§ 631(a) and 632. This is especially so where Plaintiff's interpretation of the statute is contrary to the statute's legislative history and would lead to absurd results, ignore the relevant legal standard, and fail to account for the unique language of CIPA in comparison to other federal and state statutes.

Consistent with the better reasoned cases by courts throughout the Ninth Circuit, this Court should thus dismiss Plaintiff's claims for the following reasons:

*First*, the standard for determining whether a software provider is a third party to certain communications under § 631(a) should be whether the software provider uses information collected from such communications for its own purposes, as finding otherwise is contrary to CIPA's legislative history and leads to absurd results. Even under the standard for which Plaintiff advocates, however, Plaintiff still fails to plausibly allege that the software provider here was *capable* of using any information collected for its own purposes, and her § 631(a) claim should therefore be dismissed.

*Second*, Plaintiff has not met the standard for pleading an aiding and abetting claim under § 631(a), relying on acontextual and cherry-picked dictionary definitions and inapposite case law and ignoring the contrary relevant cases from within this Circuit analyzing this issue. Per the relevant and applicable cases, Plaintiff has not plausibly alleged VITAS' intent in

connection with her aiding and abetting claim, and her § 631(a) claim should also be dismissed on this independent ground.

*Third*, in arguing for her preferred definition of "device" under § 632, Plaintiff relies solely on unpersuasive cases that ignore the unique language of that section's definition of device. Because she fails to plausibly allege a "device" under the correct interpretation of § 632, her § 632 claim should also be dismissed.

## II. ARGUMENT

### A. This Court Should Adopt the More Persuasive View that Invoca Was Not a Third Party to the Parties' Communications

While Plaintiff cites a number of cases to argue that Invoca was a third party to the parties' communications, she also acknowledges that there is substantial case law supporting the contrary. In light of this split in authority, this Court must evaluate which side of the split to align with. The better-reasoned position is that Invoca is not a third party for the purposes of § 631(a) because Plaintiff has failed to plausibly allege facts that Invoca uses any information collected for its own purposes. Further, even under the test Plaintiff prefers, Plaintiff has failed to plausibly allege that Invoca is "capable" of using the information collected for its own purposes.

#### 1. The Relevant Question Should Be Whether the Software Provider Used Information Collected for Its Own Purposes

As Plaintiff acknowledges, there is a multitude of case law interpreting CIPA § 631(a) and finding relevant whether the software provider used information collected for its own purposes, rather than whether it was *capable* of such use. *See, e.g.*, *Jones v. Peloton Interactive, Inc.*, 2024 WL 3315989, *4 (S.D. Cal. July 5, 2024) (considering whether the software provider used "the data for their own benefit and not for the sole benefit of the party to the communication" in determining whether the provider "functions as a third-party eavesdropper within the meaning of section 631(a)"); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1108-1109 (C.D. Cal. 2023) (finding that where there were no allegations that the software provider "captured data and then used the data for its own benefit by reselling the aggregated data," "Plaintiffs fail to plead that the unnamed third party acted sufficiently

independent from Defendant as to constitute an unannounced auditor under California law"); *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) (finding that where plaintiff failed to "provide facts suggesting that Webex and Kustomer are recording Defendant's customers' information for some use or potential future use beyond simply supplying this information back to Defendant," those software providers were not third parties under § 631(a)); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) (finding the software provider was not a third party under § 631(a) where "Plaintiff does not allege a single fact that suggests the third-party 'intercepted and used the data itself'"); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, *3 (N.D. Cal. Dec. 22, 2022) (finding no third party where "there [we]re no facts . . . to suggest that ActiveProspect 'intercepted and used the data itself'"); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) (finding a software provider that "captured [consumer] data, de-anonymized it, and matched it with other databases, thereby creating marketing databases of identified website visitors" to be a "tool — like the tape recorder in *Rogers* — that allows Noom to record and analyze its own data in aid of Noom's business" and thus not a third party); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) (applying the same analysis as *Graham*); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) (applying the same analysis as *Graham*).

This is the more persuasive view, as Plaintiff's preferred reading is unsupported by the legislative history of the statute, invites an avalanche of litigation and leads to absurd results. Indeed, the legislative history of the statute makes clear that the California state legislature was particularly concerned with situations "where the person on the other end of the line permits an outsider to tap his telephone or listen in on the call," finding such situations to be "especially serious . . . in view of increasing industrial spying and the theft of trade secrets by competitors." Declaration of Amy Le, Exhibit A (Digest of Assembly Bill 860, by Assembly Speaker Jesse M. Unruh (June 5, 1967)), at 1.[1] This history makes clear that the California state legislature was

---

[1] This Court may consider this legislative history, as "[l]egislative history is properly a subject of judicial notice." *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012). Indeed, courts routinely refer to such documents "as part of the familiar process of consulting legislative history in order to illuminate legislative intent." *Buffin v. City & County of San Francisco*, 2019 U.S. Dist. LEXIS 34253, *20 n.28 (N.D. Cal. Mar. 4, 2019).

concerned about the actions of true outsiders, who use the information collected to spy upon their competitors and steal trade secrets, rather than the routine recording of customer service calls by parties acting solely on behalf of a party to the communication.

To find otherwise would lead to absurd results. For instance, Plaintiff argues that "an employer who asks his or her employee to conduct wiretapping" is not exempted from liability under § 631(a). Opposition at 12. But surely Plaintiff does not contend that the fact that one of VITAS' employees—and not "VITAS" as an entity, or any of its executives—answers the phone when Plaintiff calls makes that employee an unauthorized "third party" wiretapper under § 631(a). *See, e.g.*, *Membrila v. Receivables Performance Mgmt., LLC*, 2010 WL 1407274, *2 (S.D. Cal. Apr. 6, 2010) (finding the plaintiff did not "allege eavesdropping by a third party" and thus had not alleged a § 631(a) violation where the defendant's representative called the plaintiff and recorded the telephone conversation). And if the employee is not an unauthorized third party under § 631(a), neither would a tape recorder held by that employee. *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 897 (1975) (finding that the use of a tape recorder by a party to the conversation does not violate § 631(a)).

Now, as technology has evolved, many tape recorders have built-in audio transcription capabilities. Indeed, many smartphones now have features that would allow users to record, transcribe, and generate summaries of sound recordings as well as phone calls. And smartphone companies are often generally capable of using information provided by their users to improve their systems. Under Plaintiff's reading of § 631(a), would every smartphone user using the built-in tape recording functionality of their smartphone be exposed to liability? Presumably not, as even *Ribas*, the case Plaintiff cites in support of her reading of the statute, acknowledged the California legislature's intent "to allow the use of various types of recording and monitoring equipment—including speakerphones and telephone answering machines" when enacting § 631. *Ribas v. Clark*, 38 Cal. 3d 355, 363 (1985). And under *Rogers*, the use of a tape recorder by a party to the conversation does not violate § 631(a). 52 Cal. App. 3d at 897. The sophistication of the tape recorder should not change the analysis.

In a rapidly technologizing world, our phones are no longer simply phones. They are also computers, timers, calculators, and yes, tape recorders. And as our tools become increasingly multipurpose, whether or not such tools *can* be used for other purposes should be immaterial for the purposes of § 631(a)—the question is whether or not they *are*. If the tool is not being used for purposes other than those of the defendant, it is functionally indistinguishable from the tape recorder the *Rogers* court found permissible in 1975. This Court should thus reject Plaintiff's reading of § 631(a) and join the multiple courts throughout this Circuit finding that the relevant question is whether the software provider at issue used information collected for its own purposes. And in the absence of any specific allegations that Invoca is using information collected from the parties' communications for its own purposes, the Court should dismiss Plaintiff's § 631(a) claim.

**2. In Any Case, Plaintiff Fails to Plausibly Allege that Invoca Was Capable of Using Information Collected for Its Own Purposes**

Even under Plaintiff's theory that the relevant question is whether Invoca was capable of using the information collected from the parties' communications for its own purposes, Plaintiff's allegations fall short of plausibly alleging such capability. In *Heiting v. Athenahealth, Inc.,* for instance, the court found that allegations that the software provider "may record, store, and use communication [*sic*] for the purposes of collecting information about a specific user," "creates a transcript . . . that Defendant can also access," and "uses chat data to enhance its own business" insufficient to "to support a reasonable inference that [the software provider] had the capability to use the communications for any purpose beyond providing it to Defendant." 2024 WL 3761294, *4 (C.D. Cal. July 29, 2024). This was so even where the plaintiff relied on the software provider's "marketing materials or public filings" that "advertise[d] its ability to 'connect[] customer data across systems, apps and devices to create a complete view of customers," as "[n]one of these materials relate to [the software provider's] use of Defendant's data specifically." *Id.* The *Heiting* court found this failure sufficient to warrant dismissal of the plaintiff's entire complaint.

Plaintiff's attempts to distinguish the cases VITAS relies upon are unpersuasive. In *Swarts v. Home Depot*, for instance, the *Swarts* court indeed found that "the plaintiff in *Swarts*

did not allege that 'LivePerson, or any other third party, can use the information obtained for any other purpose besides relaying it to Home Depot.'" Opposition at 9. But the court came to this conclusion *despite* the *Swarts* plaintiff's allegations that the software provider in that case "accesses and analyzes the recorded conversation[s] to understand what Home Depot customers want, to increase sales, fix inefficiencies, and improve experiences." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 745 (N.D. Cal. 2023). Though not relied upon by the *Swarts* court, the plaintiff in that case further alleged that the software provider used the chat transcripts "for 'data harvesting' (the process of extracting personal data for business and marketing purposes)." First Amended Complaint ¶ 7, *Swarts v. Home Depot, Inc.*, No. 4:23-cv-00995-JST (N.D. Cal. Apr. 25, 2023), 2023 WL 7274483. This only underscores that when faced with allegations closely mirroring Plaintiff's allegations here—that "Invoca has the capability to analyze and interpret the calls it records" and "Invoca has the capability to use the calls to market and improve its products and services," Opposition at 9—the *Swarts* court found such allegations insufficient to show that the software provider "can use the information obtained for any other purpose besides relaying it" to the website owner. 689 F. Supp. 3d at 746. Plaintiff's reliance on *Yockey* is similarly inapposite, because, as Plaintiff herself highlights, in that case Salesforce "concede[d]" the sufficiency of the plaintiffs' allegations. *Yockey v. Salesforce, Inc.*, 2024 WL 3875785, at *4 (N.D. Cal. Aug. 16, 2024). The *Yockey* court thus did not engage in any in-depth analysis of the plaintiffs' amended allegations.

Plaintiff cites several cases in support of her argument, but these cases are plainly distinguishable. *D'Angelo*, *Balletto*, *Gladstone*, and *Turner* all concern instances where the plaintiffs specifically alleged that the software provider at issue was able to use information collected for uses *other* than for the benefit of the defendant. In *D'Angelo*, for instance, the plaintiffs alleged that the software provider "'harvests' and 'exploit[s]' the data collected from the chat conversations for 'financial gain.'" *D'Angelo v. FCA US, LLC*, 2024 WL 1625771, at *14 (S.D. Cal. Mar. 28, 2024). Similarly, *Balletto* involved allegations that the software provider has the capability of "develop[ing] new Salesforce products and services," *Gladstone* involved allegations that the software provider was capable of storing and using the relevant information

to improve "AWS and affiliate machine-learning and artificial intelligence technologies," and *Turner* involved allegations that the software provider was "'amass[ing] a massive database' of voice prints, including a 'watchlist' of 'known fraudsters,'" which could be used in connection with clients other than the defendant. *Balletto v. Am. Honda Motor Co.*, 2024 WL 589090, at *1 (N.D. Cal. Feb. 13, 2024); *Gladstone v. Amazon Web Servs., Inc.*, 2024 WL 3276490, at *2 (W.D. Wash. July 2, 2024); *Turner v. Nuance Commc'ns, Inc.*, 2024 WL 2750017, at *10 (N.D. Cal. May 28, 2024). Here, there are no allegations that Invoca is capable of using any data collected for financial gain, developing new products, or building databases for use with other clients. To the extent Invoca is capable of using any data to improve its products, such improvements plainly benefit VITAS and fall within the range of activity the *Heiting* and *Swarts* courts found do not transform a company into a third-party for CIPA purposes.

Thus, even under the standard for which Plaintiff advocates, Plaintiff's allegations are insufficient to show that Invoca is capable of using information collected regarding the parties' communications for the benefit of anyone other than VITAS.

### B. Plaintiff Fails to Plausibly Allege that Defendant Knowingly and Willingly Aided and Abetted Wiretapping As Required by CIPA § 631(a)

*First*, Defendant applies the correct standard aiding and abetting standard under § 631(a) in its motion to dismiss. *See* MTD at 7. The plain language of § 631(a) imposes liability on any person "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned" as prohibited by clauses one through three. However, the statute does not define these terms. Cal. Penal Code § 631(a). As such, California courts have applied the common law definition of aiding and abetting to § 631(a), which provides that "a person may be held liable as an aider and abettor if they: (a) know the other's conduct constitutes a breach of duty and give substantial assistance or encouragement to the other to so act or (b) give substantial assistance or encouragement to the other . . . in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person."

*Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (cleaned up).

*Esparza* is instructive and persuasive on this point. In that case, the court reasoned that, in the absence of a statutory definition, other courts have applied the common law definition of aiding and abetting to similar statutes imposing civil liability for a third party's conduct. *Id.* (citing *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325–26 (1996) (applying common law civil aiding and abetting principles where California's Fair Employment and Housing Act allowed for liability but provided no statutory standard) and *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 483–85 (2023) (concluding the common law tradition supplies the proper legal framework for civil aiding and abetting liability where a federal statute imposes civil liability upon a person who aids and abets but does not define the term aids and abets)). This reasoning has been adopted by other courts in this Circuit assessing whether plaintiffs have adequately alleged the requisite scienter to support a claim under § 631(a) for aiding and abetting. *See also Rodriguez v. Ford Motor Co.*, 2024 WL 1223485, at *15 (S.D. Cal. Mar. 21, 2024) (adopting *Esparza*); *Valenzuela v. Kroger Co.*, 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024) (applying the common law definition to Section 631(a) because, "in the absence of an explicit statutory scienter requirement, in California civil actions, the common law definition applies").

By contrast, Plaintiff's position, which employs acontextual dictionary definitions cherry-picked by Plaintiff to find that "'aid" should be interpreted as 'to give assistance,' 'agrees with' as 'to concur in opinion or purpose,' and 'employs' as 'to make use of' or 'to hire,'" is not supported by the case law. Opposition at 15. Two of the three cases Plaintiff cites in support do not even discuss CIPA's intent requirement. *In re Cell Tower Litigation* involved the federal Telecommunications Act of 1996 and never mentions CIPA. 2012 WL 1903883, at *1 (S.D. Cal. May 24, 2012). Likewise, *Revitch* does not actually consider the definition of "aids" or any scienter requirement, though Plaintiff misleadingly frames that court's mere singular use of the

term "enabling" in its decision—a word notably absent from the actual statute—as an endorsement. In *Cousin*, Plaintiff's only remaining authority, the court disregarded the defendant's intent argument on the basis that the defendant "provide[d] no case law requiring the Court to analyze 'aids, agrees with, employs, or conspires with' as solely 'aiding and abetting.'" *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1129-30 (S.D. Cal. 2023). By contrast, in the present case, VITAS has provided several Ninth Circuit cases requiring exactly that. Moreover, *Cousin* neither states what "aids, agrees with, employs, or conspires with" should mean nor supports the broad definitions cherry-picked by Plaintiff from various non-legal sources.

*Second*, Plaintiff fails to allege sufficient facts to make it plausible that VITAS had the requisite intent to support an aiding and abetting claim under § 631(a). Plaintiff claims she meets the standard by alleging Defendant knew Invoca's conduct constituted a breach of Plaintiff's privacy right and gave assistance to Invoca by employing it. Opposition at 17-18. But this is inadequate. *Esparza*, *Rodriguez*, and *Heiting* are instructive. In each case, the court found that allegations that the defendant hired and used a vendor's software were insufficient to establish the requisite intent under CIPA § 631(a). The relevant inquiry to establish that VITAS knew of and assisted Invoca in breaching a duty to Plaintiff is not simply whether VITAS knew Invoca was recording VITAS's own communications for VITAS's own use, but rather whether VITAS knew Invoca was misusing that data for Invoca's own unauthorized purposes. *See Esparza*, 2024 WL 559241, at *6 (finding plaintiff failed to state an aiding and abetting claim, explaining "Plaintiff asserts facts to support the substantial assistance prong of his aiding and abetting claim by alleging that Defendant embedded [vendor's] software code into its website. On the knowledge prong . . . at this stage of the case, there has been no finding that [vendor] was engaged in wiretapping or eavesdropping, and even if there was such a finding, that would not speak to Defendant's knowledge."); *Rodriguez,* 2024 WL 1223485, at *15

(finding no intent where "Plaintiff does not allege that Defendant knew that [vendor] was using the chat data beyond storing it for Defendant"); *Heiting v. Taro Pharms. USA, Inc.*, 2023 WL 9319049, at *6 (C.D. Cal. Dec. 26, 2023) (dismissing CIPA claim, finding that "[w]hile the Complaint alleges that Defendant paid [vendor] to intercept messages, it does not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet [vendor's] purported CIPA violation. Therefore, the Court finds that Plaintiff has not plausibly alleged scienter under the statute.").

In evaluating whether Plaintiff has alleged sufficient facts to make it plausible that VITAS had the requisite intent and knowledge to support aiding and abetting liability, the Court should apply its common sense and judicial experience. *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009). In doing so, the Court should consider that Plaintiff's complaint makes no attempt to address, much less grapple with, the fact that both the Business Associate Agreement between VITAS and Invoca and Invoca's own privacy policy prohibit misuse of client data, and Plaintiff's Opposition does not dispute the existence of this agreement or privacy policy. *See* MTD at 6; Invoca, *Privacy Policy*, https://www.invoca.com/privacy-policy (last accessed September 4, 2024).[2] This case is thus analogous to *Heiting*, where the court held that allegations the defendant paid a vendor to intercept its messages were not sufficient to demonstrate the defendant acted with requisite knowledge or intent under CIPA, because the vendor "was prohibited from using or retaining customer data, other than for the purposes outlined in its contract with Defendant." *Heiting*, 2023 WL 9319049, at *6.

---

[2] The Court can consider Invoca's website and Privacy Policy in deciding Defendant's motion to dismiss because the FAC refers to it extensively, *see* FAC ¶¶ 20-35, and the website and Privacy Policy forms the basis of Plaintiff's claims, as she uses it to argue that Defendant is capable of using the contents of conversations for its own purpose. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Plaintiff fails to cite any relevant authority showing that she adequately alleged the scienter requirement. At the outset, Plaintiff's citations[3] analyzing other states' wiretapping statutes should be disregarded as inapposite because "there are material differences between CIPA and the wiretapping statutes of the other 49 states…These differences are material, as their application would spell the difference between the success and failure of a claim." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 602–03 (N.D. Cal. 2015) (cleaned up). Plaintiff's CIPA cases are also inapposite. In *Gladstone*, the court considered whether the plaintiff adequately pled that Amazon, the *creator* of the software at issue, acted intentionally and willfully under CIPA in designing a product "for the purpose of recording and analyzing communications." *Gladstone*, 2024 WL 3276490, at *11. But here, Plaintiff does not make allegations about software *creator* Invoca's intent, but rather attempts to expand *Gladstone*'s holding to apply to software *users* like VITAS. But like in the more analogous Ninth Circuit cases VITAS has cited involving software *users*, Plaintiff does not and cannot allege any facts suggesting VITAS knew Invoca was "using the . . . data beyond storing it." *Rodriguez,* 2024 WL 1223485, at *15. Lastly, in *James*, the court actually stated that, based on allegations that a party entered into a contract with a vendor to record its own communications, "it cannot reasonably be inferred that [software user] knew [vendor] would intercept for the benefit of a company other than [software user]." *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 954 (N.D. Cal. 2023). As such, *James* actually supports Defendant's argument that Plaintiff has not adequately alleged facts showing VITAS had the requisite knowledge or intent to support a CIPA § 631(a) claim.

Because Plaintiff has not alleged facts making it plausible that VITAS had the requisite knowledge and intent to support an aiding and abetting claim, *i.e.*, that Invoca was using VITAS's data for its own purposes, this court should dismiss Plaintiff's CIPA § 631(a) claim.

[3] *See Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237 (D.D.C. 2014); *Strehl v. Guitar Ctr., Inc.*, 2024 WL 2790373 (C.D. Cal. May 29, 2024).

### C. Plaintiff Fails to Plausibly Allege that Invoca's Software Is "An Electronic Amplifying or Recording Device" as Required Under CIPA § 632(a)

Plaintiff's CIPA § 632 should be dismissed because Plaintiff has not adequately alleged Invoca used an electronic amplifying or recording device, as required by the statute. *See* MTD at 7-8. Plaintiff alleges Invoca recorded the alleged data using its "conversation intelligence software-as-a-service." FAC ¶ 21. But CIPA § 632(a) applies only to the use of "an electronic amplifying or recording device" to eavesdrop upon or record a confidential communication, not software. *See Doe v. Microsoft Corp.*, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023) (dismissing CIPA § 632 claim where plaintiff alleged defendant used software to record its communication). At the outset, the plain meaning of CIPA § 632(a)'s modifiers "electronic amplifying"[4] or "recording"[5] "device"[6] excludes software. Moreover, "device" does not apply to software or mobile applications "because they are not 'equipment'." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) (citing *Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017)). Although *Moreno* and *In re Google* concerned CIPA § 637.7 claims, those cases analyzed the general meaning of the word "device" and determined that "device" means "equipment." *Moreno*, 2017 WL 6387764, at *5 ("A common meaning of 'device' is 'a thing made or adapted for a particular purpose, especially a piece of mechanical or electronic equipment.' Google Dictionary, www.google.com/search?q=Dictionary (last visited December 14, 2017).")

---

[4] *Amplifier*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com /dictionary/amplifier ("an electronic device (as in a stereo system) for amplifying voltage, current, or power") (last visited Sept. 5, 2024).

[5] *Recorder*, OXFORD LEARNER'S DICTIONARY, https://www.oxfordlearnersdictionaries.com/us /definition/english/recorder ("a machine for recording sound or pictures or both…a tape/cassette/video/DVD recorder") (last visited Sept. 5, 2024).

[6] *Device*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/device "an object or machine that has been invented for a particular purpose") (last visited Sept. 5, 2024).

In opposition, Plaintiff points to authority finding that software meets the definition of device under "the Federal Wiretap Act and analogous state wiretapping laws", but those statutes involved much broader definitions of "device" than CIPA § 632(a). Opposition at 18. While the Wiretap Act covers "*any* device or apparatus" that intercepts communications, 18 U.S.C. § 2510 (emphasis added), CIPA § 632(a) is more narrowly limited to an "*electronic amplifying or recording* device." (emphasis added). Thus, cases using this line of reasoning[7] should be disregarded because they consider whether software is more broadly "*any* device" rather than an "*electronic amplifying or recording* device." And while *Doe* and *Gladstone* address CIPA, they analogize to and rely heavily on cases assessing the Wiretap Act without any discussion of CIPA's entirely different definition of "device." *See Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1080 (N.D. Cal. 2023) (relying solely on single Wiretap Act case); *Gladstone*, 2024 WL 3276490, at *7-8. Plaintiff's remaining cases are also distinguishable because they either interpret other states' wiretapping statutes or entirely distinct CIPA provisions. In *James*, which interpreted Pennsylvania's Wiretapping and Electronic Surveillance Control Act (WESCA) rather than CIPA, the court specifically noted the Pennsylvania statute "broadly defined the term 'device'" as "[a]ny device or apparatus . . . that can be used to intercept a wire, electronic, or oral communication." *James*, 701 F. Supp. 3d at 956-57. In contrast to CIPA § 632's limited application to only an "electronic amplifying or recording device," WESCA's "use of the word 'any' before the phrase 'device or apparatus' in Section 5702 implies that the class of technology contemplated by WESCA is broad." *Id.; Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 975 (N.D. Cal. 2023) (also interpreting Pennsylvania wiretapping statute). And in *Revitch*, the court assessed a separate CIPA

[7] *United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) (interpreting Wiretap Act); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015) (same); *Luis v. Zang*, 833 F.3d 619, 634 (6th Cir. 2016) (same).

provision, § 635, to find that code could plausibly meet that provision's broader definition of *any* "device . . . primarily or exclusively designed or intended for eavesdropping." *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019). Moreover, the *Revitch* court actually dismissed the plaintiff's CIPA § 632 claim and expressed doubt that code could constitute a "device" under 632. *Id.* ("Even if Revitch could plausibly allege that NaviStone's code constitutes an 'amplifying or recording device[]' . . . ").

As such, Plaintiff's § 632(a) must be dismissed. *See Microsoft Corp.*, 2023 WL 8780879, at *8 ("Because software does not constitute a 'device' under the CIPA, Plaintiff's § 632 claim . . . is deficient.").

## III. CONCLUSION

For the foregoing reasons, VITAS respectfully requests that the Court dismiss the FAC in its entirety. Such dismissal should be with prejudice, as Plaintiff both had access to VITAS' motion to dismiss arguments and a prior opportunity to amend, but did not cure the deficiencies with her complaint in either instance. *See, e.g., Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087-88 (9th Cir. 2002) (affirming dismissal of first amended complaint with prejudice, noting that further amendment would be futile because the "basic underlying facts have been alleged by plaintiffs and have been analyzed . . . We conclude that the plaintiffs cannot cure the basic flaw in their pleading").

Dated: September 5, 2024

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: */s/ David R. Singh*
DAVID R. SINGH

DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
AMY TU QUYEN LE (Bar No. 341925)
amy.le@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

KEYA I. PATEL (admitted *pro hac vice*)
keya.patel@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendant