**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia K. Venditti (State Bar No. 332688)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
jvenditti@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
Max S. Roberts (*pro hac vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com
mroberts@bursor.com

**Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHARMAINE TATE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VITAS HEALTHCARE CORPORATION,<br><br>Defendant. | Case No. 2:24-CV-01327-DJC-CSK<br><br>**PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>Dept.: Courtroom 10 – 13th Floor<br>Judge: Hon. Daniel J. Calabretta |

Plaintiff Charmaine Tate ("Plaintiff") respectfully submits this Notice of Supplemental Authority regarding the pending Motion to Dismiss. *See* ECF Nos. 12, 16, 19. Plaintiff brings to the Court's attention an order entered on December 18, 2024, by Judge Dana M. Sabraw of the Southern District of California in *Mata v. Zillow Group, Inc.*, Case No. 3:24-cv-1095, ECF No. 13 (S.D. Cal. Dec. 18, 2024) (the "*Mata* Order"); *see also Mata v. Zillow Group, Inc.*, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024). The *Mata* Order is attached hereto as **Exhibit 1**. The *Mata* Order is relevant to the parties' respective arguments concerning regarding whether Defendant acted with the intent required by CIPA pursuant to Cal. Penal Code § 631(a).

Dated: January 7, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Julia K. Venditti (State Bar No. 332688)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
jvenditti@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
Max S. Roberts (*pro hac vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com
mroberts@bursor.com

**Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff and the Putative Class*

**EXHIBIT 1**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GUILLERMO MATA on behalf of himself and all others similarly situated,<br>Plaintiff,<br>v.<br>ZILLOW GROUP, INC.,<br>Defendant. | Case No.: 24-cv-01095-DMS-VET<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint. (Defendant's Motion ("Def.'s Mot."), ECF No. 7). Plaintiff filed an Opposition, (Plaintiff's Opposition ("Opp'n"), ECF No. 10), and Defendant filed a Reply, (Defendant's Reply ("Reply"), ECF No. 11). For the following reasons, the Court **DENIES** Defendant's Motion.

## I. BACKGROUND

Plaintiff Guillermo Mata brings this class action on behalf of himself, and all others similarly situated. (Plaintiff's Complaint ("Compl."), ECF No. 1). Defendant Zillow Group, Inc. ("Zillow") is a corporation that operates Zillow.com, an online real estate marketplace with residential properties for sale and lease. (*Id.* at 2). Plaintiff alleges that

listings on Defendant's website include video tour walkthroughs and third-party tracking technologies. (*Id.* at 5–6). According to Plaintiff, when registered users of Defendant's website watch video walkthroughs of available properties, third-party tracking technologies obtain their viewing activity and personally identifiable information ("PII") and transmit that information to third-party tracking vendors without users' consent. (*Id.* at 2, 7). In his case, Plaintiff alleges Defendant shared his Zillow activity with Facebook approximately twenty times. (*Id.* at 8).

Plaintiff's class action asserts two claims: (1) violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710; and (2) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a). (*Id.* at 11–16). Plaintiff's proposed nationwide class is defined as "[a]ll persons in the United States with a Zillow account and who requested or viewed a video walkthrough tour on or through Zillow.com during the applicable limitations periods." (*Id.* at 9). Plaintiff also proposes an identical subclass for persons in California. (*Id.* at 10). Plaintiff brings the first claim on behalf of the proposed nationwide class and the second claim on behalf of the proposed subclass. (*Id.* at 11, 14).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted". Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Factual allegations must be enough to raise a right to relief

above the speculative level." *Twombly*, 550 U.S. at 555. If Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible," the Complaint "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

When a court grants a motion to dismiss, it must then decide whether to grant leave to amend. Leave to amend "shall be freely given when justice so requires". Fed. R. Civ. P. 15(a). "[T]his policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). A court should grant leave to amend where there is no (1) "undue delay", (2) "bad faith or dilatory motive", (3) "undue prejudice to the opposing party" if amendment were allowed, or (4) "futility" in allowing amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Grp., Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007).

## III. DISCUSSION

### A. VPPA

Under the VPPA, "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person". 18 U.S.C. § 2710(b)(1). According to Defendant, Plaintiff fails to state a claim because Defendant is not a "video tape service provider" and Plaintiff is not a "consumer". (Def.'s Mot. 10). Defendant further argues that the allegedly disclosed information is not PII. (*Id.*). The Court will address these arguments below.

**a. "Video Tape Service Provider"**

Defendant contends that it is not a "video tape service provider" because it uses video walkthroughs merely for advertising. (*Id.* at 13). Plaintiff responds that Defendant's business purpose is "showcas[ing] real estate" through audiovisual technology. (Opp'n 12). The Court agrees with Plaintiff.

A "video tape service provider" is "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials". 18 U.S.C. § 2710(a)(4). Specifically, the parties dispute whether Defendant is "engaged in the business . . . of . . . delivery of . . . audio visual materials" such as video walkthrough tours. *Id.*; (Def.'s Mot. 12); (Opp'n 12). Given that "the term 'business' connotes 'a particular field of endeavor,' several district courts in this Circuit have required that the delivery of video content be 'a focus of the defendant's work'—i.e., that the defendant's product or service be 'substantially involved in the conveyance of video content' and 'significantly tailored to serve that purpose.'" *Tawam v. Feld Ent. Inc.*, 684 F.Supp.3d 1056, 1060 (S.D. Cal. 2023) (quoting *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F.Supp.3d 1204, 1221 (C.D. Cal. 2017)) (collecting cases). Peripheral or passive involvement in delivering audiovisual material—such as for advertising or marketing purposes—is insufficient. *Cantu v. Tapestry, Inc.*, 697 F.Supp.3d 989, 993 (S.D. Cal. 2023) ("Hosting and creating prerecorded videos for the purpose of marketing its products does not suffice to plausibly allege Defendant is a video tape service provider."). Rather, "the plaintiff must sufficiently allege that the defendant's 'products are specifically tailored to serve audiovisual material.'" *Id.* (quoting *Carroll v. Gen. Mills, Inc.*, 2023 WL 4361093, at *3 (C.D. Cal. June 26, 2023)).

The Court finds that Defendant's "conveyance of video content" is "significantly tailored" to its business purpose of facilitating real estate transactions. *In re Vizio*, 238 F.Supp.3d at 1221. Defendant "operates [a] real estate marketplace through its website, Zillow.com, and mobile application." (Compl. 5). Plaintiff plausibly alleges that, in serving as a marketplace, "a key element of Defendant's business model is to showcase

for-sale residential properties and properties available for lease on its website using . . . video content." (*Id.* at 2). In other words, Defendant's audiovisual technology is what attracts real estate agents and sellers to list their properties on Zillow.com in the first place. The video walkthrough tours make Defendant's website a better alternative to other platforms since it "boosts the views" on listings and thereby helps sellers "find an interested buyer more quickly". (*Id.* at 5) (quoting Defendant's website). Defendant's business would fail if agents and sellers did not elect to list their properties with Defendant. Thus, attracting listings by offering the use of video walkthrough tours is essential to Defendant's business model.

Defendant's citations are distinguishable insofar as they involve companies using video content to market their *own* products. *See, e.g., Rodriguez v. Hershey Co.*, 2023 WL 6798506, at *2 (S.D. Cal. Oct. 12, 2023) ("The allegation that Defendant uses videos to market their product indicates that delivering audiovisual material is ancillary to Defendant's true business purposes."); *Hernandez v. Jostens, Inc.*, 2024 WL 1135165, at *2 (C.D. Cal. Feb. 7, 2024) ("In Plaintiff's own words, the videos are aimed toward the sale of Defendant's products and are a marketing tool to promote Defendant's brand and website, nothing more."). In those cases, the companies' primary business purposes were to profit from the sale of their products. Videos advertising those products were merely a means to achieve those purposes. *See Sellers v. Bleacher Rep., Inc.*, 2023 WL 4850180, at *6 (N.D. Cal. July 28, 2023) (distinguishing similar cases by finding that "these are primarily retail companies that use videos incidentally to sell their retail goods – not companies for whom the videos are the product"). Here, by contrast, Defendant uses video content to make Zillow.com a superior platform for sellers to advertise their properties. The facts of this case are thus more akin to *In re Vizio*, where the court held that Vizio was a "video tape service provider" partially because it "enter[ed] into agreements with . . . [video] content providers" such as Netflix and Hulu "to enable consumers to access their programming on Vizio's Smart TVs." *In re Vizio*, 238 F.Supp.3d at 1222. In facilitating this access, Vizio was able to "advertis[e] its Smart TVs as 'a passport to a world of

entertainment, movies, TV shows and more,' and charg[e] consumers a premium". *Id.* Similarly, Defendant—by offering agents and sellers advanced video technology—enters into agreements with them to host their properties so that Defendant can advertise itself as a real estate marketplace and obtain a commission on sales made. (Compl. 2, 5–6). Ultimately, Plaintiff's allegation that Defendant's business model is tailored to delivery of video content raises factual questions that ought not be decided at the motion to dismiss stage. *Sellers*, 2023 WL 4850180, at *6. Given that this Court must construe the pleadings in Plaintiff's favor, the Court is satisfied that Plaintiff has plausibly alleged that Defendant is a "video tape service provider" as the term is construed in the VPPA. *Manzarek*, 519 F.3d at 1031.

**b. "Consumer"**

The VPPA defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider". 18 U.S.C. § 2710(a)(1). The parties agree that Plaintiff is neither a "renter" nor "purchaser" of Defendant's "services". (Compl. 12); (Def.'s Mot. 14). At issue instead is whether Plaintiff is a "subscriber" of Defendant's "services".

The Ninth Circuit has yet to clarify who amounts to a "subscriber" under the VPPA. However, "not everything that can conceivably be labeled a 'subscription' automatically triggers the protections of the VPPA." *Tawam*, 684 F.Supp.3d at 1061. Rather, courts have "required the existence of a factual nexus or relationship between the subscription provided by the defendant and the defendant's allegedly actionable video content." *Id.* (internal citations omitted). According to the Eleventh Circuit, for instance, a subscription "involves some type of commitment, relationship, or association (financial or otherwise) between a person and an entity." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015). Relevant factors include "payment, registration, commitment, delivery, . . . and/or access to restricted content." *Id.* In the First and Second Circuits, there is a sufficient factual nexus when a person provides personal information. *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 489 (1st Cir. 2016); *Salazar v. Nat'l Basketball*

*Ass'n*, 118 F.4th 533, 552–53 (2d Cir. 2024). All Circuits that have addressed this question agree that "someone doesn't have to spend money to be a VPPA 'subscriber.'" *Id.* at 551 (agreeing with 11th and 1st Cirs. because to hold otherwise would make other terms in "consumer" definition superfluous).

Plaintiff has adequately pled that he is a "subscriber" of Defendant's website and thus a "consumer" under the VPPA. As an initial matter, Plaintiff registered for Defendant's website and created a Zillow account. (Compl. 8). Although he did not pay money for his account, he shared his personal information, including his email address and Facebook ID. (*Id.*); *Yershov*, 820 F.3d at 487 (finding that plaintiff was subscriber because he provided his Android ID and mobile device's GPS location); *Salazar*, 118 F.4th at 552 (coming to same conclusion because plaintiff provided his email address, IP address, and cookies associated with his device); *see also Ellis*, 803 F.3d at 1257 (finding that plaintiff was not subscriber because he "did not provide any personal information to Cartoon Network"). "[A]ccess was [thus] not free of . . . commitment"; "consideration [came] in the form of [personal] information, which was of value to [Plaintiff]." *Yershov*, 820 F.3d at 487. Plaintiff also installed Defendant's mobile application on his phone and viewed video content as a registered user, which "established a relationship with [Defendant] that is materially different from what would have been the case had [Zillow] simply remained one of millions of sites on the web that [Plaintiff] might have accessed through a web browser". *Id.*; (*see* Compl. 8) ("At all relevant times, Plaintiff has been one of Defendant's subscribers after registering his email with Defendant in order to create a Zillow account."); *Tawam*, 684 F.Supp.3d at 1062 (holding that there was insufficient nexus between subscription and video content because plaintiffs "only signed up for the email mailing list 'after viewing the videos'"); *Ellis*, 803 F.3d at 1257 (plaintiff was not subscriber because he "did not sign up for or establish an account with Cartoon Network" and "did not become a registered user of Cartoon Network or the CN app"). Accordingly, "[t]his is sufficient at the pleadings stage to satisfy the requirement that [Plaintiff] allege that he became a 'subscriber of' [Defendant's website]." *Salazar*, 118 F.4th at 553.

**c. "Personally Identifiable Information"**

Defendant argues that Plaintiff has not alleged the disclosure of PII because he has not identified the specific videos he watched. (Def.'s Mot. 16). The Court disagrees. Under the VPPA, PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider". 18 U.S.C. § 2710(a)(3). As construed by the Ninth Circuit, PII "means only that information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (internal quotation marks and citation omitted). Although Plaintiff does not list the names of videos that were disclosed to third parties, Plaintiff explicitly alleges that Defendant disclosed specific video information to third-party vendors. (Compl. 8) ("Whenever Plaintiff requested or obtained such prerecorded videos on Defendant's website, Defendant disclosed to third-party tracking vendors, including Meta, *records of which specific videos Plaintiff requested* as well as Plaintiff's PII in the form of his email address (which includes his last name), and Facebook ID.") (emphasis added); (*see also id.*) ("Plaintiff's Facebook profile shows that Defendant has shared information with Facebook concerning Plaintiff's Zillow site activity, *which includes specific records of the content Plaintiff viewed*, on approximately 20 occasions[.]") (emphasis added). The Court is required to accept this allegation as true.[1] *Iqbal*, 556 U.S. at 678; *Branca v. Bai Brands, LLC*, 2019 WL 1082562, at *3 (S.D. Cal. Mar. 7, 2019) ("While Branca's assumption as to the type of malic acid contained in Defendants' Products ultimately may be incorrect, at the pleading stage, this Court does not operate as a fact-finder, but, instead, must presume all facts . . . as true.") (internal quotation marks omitted). It is unnecessary for Plaintiff to name the exact videos allegedly disclosed in his Complaint. *Sellers*, 2023 WL 4850180, at *3 ("Here, however, plaintiff alleges that Bleacher Report uses the Facebook pixel to disclose 'the content name

---

[1] The Court fails to see how Plaintiff's screenshot contradicts these allegations. (Reply 7).

of the video the digital subscriber watched', . . . [which] is sufficient at the pleadings stage."). Plaintiff has therefore met his burden. The Court **DENIES** Defendant's Motion to Dismiss the VPPA claim.

**B. CIPA**

CIPA punishes any person:

> [1] who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or [2] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or [3] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or [4] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section[.]

Cal. Penal Code § 631(a). While Defendant argues that Plaintiff fails to state a claim under any part of this provision, Plaintiff's Complaint alleges violation of the second and fourth clauses. Specifically, Plaintiff contends that Meta directly violated the second clause of § 631(a), and that Defendant may be held liable as an aider and abettor under the fourth clause. (Compl. 15); (Opp'n 19–23). The Court will address only these arguments.

**a. Meta's Violation**

To state a claim under the second clause of § 631(a), Plaintiff must allege facts demonstrating that Meta "willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[ ], or attempt[ed] to read, or to learn the contents or meaning of any message, report, or communication while the same [was] in transit or passing over any wire, line, or cable, or [was] being sent from, or received at any place within this state[.]" Cal. Penal Code § 631(a). According to Defendant, Plaintiff fails to allege that Meta intercepted "contents" of a communication while it was in "transit". (Def.'s Mot. 20). Plaintiff responds that he has plausibly alleged both requirements.

**i. "Contents"**

"The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Underhill v. Kornblum*, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017). When examining the Wiretap Act, the Ninth Circuit has defined the term 'contents' as "the intended message conveyed by [a] communication". *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Excluded from this definition is "record information regarding the characteristics of the message that is generated in the course of the communication." *Id.* Record information "includes the name, address, and subscriber number or identity of a subscriber or customer." *Id.* "Numerous federal courts have applied this definition in this context." *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1082 (C.D. Cal. 2021) (collecting cases).

Here, Plaintiff alleges that Meta obtained information about "which specific videos Plaintiff requested". (Compl. 8). This information amounts to content because it "concern[s] the substance" of Plaintiff's communications with Defendant. *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 796 (N.D. Cal. 2022). Construing Plaintiff's allegation in his favor, the Court reads the Complaint as alleging that Meta intercepted the names of the videos Plaintiff watched, which divulges his "personal interests, queries, and habits". *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020). Plaintiff buttresses this allegation with Meta's own admission that its Meta Pixel may receive individuals' "interactions", or "things that [they]'ve done on an app or website". (Compl. 8 n.4); *Review your activity off Meta technologies*, FACEBOOK, https://www.facebook.com/help/2207256696182627. Interactions include "viewing content", "searching for an item", "adding an item to a shopping cart", and "making a purchase". *Id.* These examples illustrate that Meta, through its Pixel, has access to the content of individuals' searches on websites. *Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1093 (N.D. Cal. 2022) (noting that "a person's personal search engine queries . . . are contents"). Thus, Plaintiff has plausibly alleged that Meta has intercepted the content of Plaintiff's communications with Defendant.

**ii. "In Transit"**

To satisfy the "in transit" requirement, communications "must be acquired during transmission, not while . . . in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).[2] While a plaintiff must do more than "merely restate[] the pleading requirement of real time interception", *Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024), the standard is not overly burdensome. For instance, "allegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024). "[A] pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023).

Plaintiff pleads enough factual content for this Court to plausibly infer that Meta intercepted his communications while "in transit". Plaintiff alleges that Defendant incorporated third-party tracking technologies into its website so that "whenever" Plaintiff watched video content, Meta obtained access. (Compl. 8); *UAG Escondido*, 2024 WL 559241, at *3 (finding requirement satisfied because plaintiff alleged that technology code was embedded in defendant's website). Although Plaintiff did not use words like "real time" and "simultaneously", the Court finds the meaning of his allegation the same. The term "whenever" is sufficient for the Court to infer that Plaintiff's communications were intercepted "in real time through the use of computer code", which supports the "in transit" requirement. *Id.* Plaintiff has thus alleged a direct violation of § 631(a) by Meta.

---

[2] As noted above, CIPA violations are analyzed under the same framework as federal Wiretap Act violations. *Underhill*, 2017 WL 2869734, at *6.

**b. Defendant's Aiding and Abetting**

The fourth clause of § 631(a) requires Plaintiff to allege facts that Defendant "aid[ed], agree[d] with, employ[ed], or conspire[ed] with [Meta] to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above". Cal. Penal Code § 631(a). Defendant argues that Plaintiff has made only conclusory allegations.[3] (Def.'s Mot. 23). The Court disagrees.

Because the statute does not define the terms in the fourth clause of § 631(a), this Court may look to "the common law definition of aiding and abetting." *UAG Escondido*, 2024 WL 559241, at *6 (quoting *Fiol v. Doellstedt*, 50 Cal.App.4th 1318, 1325 (1996)); *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 484 (2023) (stating that "terms like 'aids and abets' are familiar to the common law" and that "such common-law terms bring the old soil with them") (internal quotation marks, citation, and alteration omitted); *Valenzuela v. Kroger Co.*, 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024) ("In the absence of an explicit statutory scienter requirement, in California civil actions, the common law definition applies."). Under the common law, a person is an aider and abettor if they "(a) know[ ] the other's conduct constitute[s] a breach of duty and give[ ] substantial assistance or encouragement to the other to so act or (b) give[ ] substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *UAG Escondido*, 2024 WL 559241, at *6 (quoting *Saunders v. Superior Court*, 27 Cal.App.4th 832, 845 (1994)).

"Here, Plaintiff asserts [sufficient] facts to support the substantial assistance prong of his aiding and abetting claim by alleging that Defendant embedded [third-party tracking technologies] into its website." *Id.*; *Rodriguez v. Ford Motor Co.*, 722 F.Supp.3d 1104, 1124 (S.D. Cal. 2024) ("Here, Plaintiff asserts facts to support the substantial assistance

---

[3] The Court will not further address Defendant's argument that Plaintiff fails to state a claim under the fourth clause because he has not alleged a predicate violation by Meta. (Def.'s Mot. 22–23). The Court has already found a predicate violation by Meta. *See supra* III.B.a.

prong of a common law aiding and abetting claim by alleging that Defendant plugged LivePerson's Application Programming Interface into its website."); (Compl. 6, 8). As for the knowledge prong, Plaintiff alleges that Defendant knowingly "programmed such third-party tracking technology into its website for advertising purposes and to increase its profits." (*Id.* at 7); (*see also id.*) ("Defendant knew that such tracking technology would transmit site visitors' activity, including records of which video tours they have watched, as the entire purpose of implementing such technology is so that Defendant can target advertisements or send marketing emails through the technology's third-party providers."). Similar allegations have been enough for sister courts in this Circuit. *See, e.g.*, *Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 3738055, at *6 (C.D. Cal. July 31, 2024) ("These allegations explain that Defendant, itself, embeds the allegedly violative Genesys software, that Defendant knows that Genesys software intercepts and collects consumer communications without their knowledge or consent, and that Defendant benefits from Genesys's software. The SAC thus supports a plausible inference that Defendant knew that Genesys's software breached a duty to Plaintiff and that Defendant substantially assisted that breach by embedding the software."); *Toy v. Life Line Screening of Am. Ltd.*, 2024 WL 1701263, at *1 (N.D. Cal. Mar. 19, 2024) ("Life Line allegedly purposely installed these tracking technologies to optimize its advertising and marketing . . . These allegations plausibly plead that Life Line 'aid[ed], agree[d] with, employ[ed], or conspire[d] with' Facebook and/or Google to intercept Toy's information."); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *8 (N.D. Cal. Oct. 1, 2024) (applying different standard but finding similar allegations as "sufficient to show that Carbon Health aided, agreed with, employed, or conspired with Facebook"). The Court joins this line of cases. As such, the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's CIPA claim.

**C. Fraudulent Concealment and Tolling**

Plaintiff alleges that the "applicable statutes of limitations are tolled by virtue of Defendant's knowing and active concealment" of its violations. (Compl. 11). Defendant argues Plaintiff has failed to plead these allegations with particularity, as is required for

fraud claims. (Def.'s Mot. 24). Considering Ninth Circuit precedent, the Court will reserve ruling on these issues until later because the test for equitable tolling is "fact-intensive" and "more appropriately applied at the summary judgment or trial stage of litigation." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993); *see also Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1199 (9th Cir. 1988) ("To decide these equitable tolling issues in the first instance, however, the district court would have had to resolve certain disputed factual matters.").[4] "At a minimum, determining the applicability of equitable tolling necessitates resort to the *specific* circumstances of the prior claim[s]: parties involved, issues raised, evidence considered, and discovery conducted." *Cervantes*, 5 F.3d at 1276 (emphasis in original). Therefore, the Court will **DENY** Defendant's request to dismiss Plaintiff's tolling claim at this stage.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's Complaint.

**IT IS SO ORDERED.**

Dated: December 18, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court

[4] Defendant relies on *Hargreaves* to support its argument that fraud claims must be pled with particularity. (Def.'s Mot. 24); (Reply 11). The court in *Hargreaves* acknowledged Ninth Circuit precedent but stated that sister district courts have ruled on equitable tolling allegations at the motion to dismiss stage for Truth In Lending Act ("TILA") claims specifically. *Hargreaves v. Saxon Mortg. Servs., Inc.*, 2009 WL 10673987, at *2 (C.D. Cal. Nov. 17, 2009) ("While the issue of equitable tolling is not generally amenable to resolution on a Rule 12(b)(6) motion because it often depends on matter outside the pleadings, several district courts in the Ninth Circuit have found that equitable tolling of a TILA claim requires a showing of fraudulent concealment or active conduct by the defendant in delaying the filing of the plaintiff's claim.") (internal quotation marks and citations omitted). Because a TILA claim is not at issue here, the Court does not find *Hargreaves* on point.